# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: DECADE, S.A.C., LLC, et al., <br><br> Debtors. | ) <br> ) <br> ) <br> ) <br> ) | Chapter 7 <br> Bankr. No. 18-11668 (CSS) <br> (Jointly Administered) |
| AARON GOODWIN and ERIC GOODWIN, <br><br> Appellants, <br><br> v. <br><br> DAVID W. CARICKHOFF, in his capacity as Chapter 7 Trustee for the Estates of DECADE S.A.C., LLC and GOTHAM S&E HOLDING, LLC, and 23 CAPITAL LIMITED, <br><br> Appellees. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | C.A. No. 18-1880-MN |

## <u>MEMORANDUM OPINION</u>

Frederick B. Rosner, Jason A. Gibson, THE ROSNER LAW GROUP LLC, Wilmington, DE; Keith Miller, Gary Eisenberg, Adam Mandelsberg, PERKINS COIE LLP, New York, NY – Attorneys for Appellants

William P. Bowden, Ricardo Palacio, ASHBY & GEDDES, P.A., Wilmington, DE – Attorneys for Appellees

Alan Root, ARCHER & GREINER, P.C., Wilmington, DE – Attorneys for Chapter 7 Trustee

February 5, 2020

**NOREIKA, U.S. DISTRICT JUDGE**

This dispute arose in the Chapter 7 cases of Decade, S.A.C., LLC and Gotham S&E Holding, LLC ("Debtors"). Before the Court is an appeal by Aaron and Eric Goodwin (the "Goodwins") from (i) the Order entered November 5, 2018 (A004)[1] ("Settlement Order") approving the motion (A059) ("Settlement Motion") filed by appellee David W. Carickhoff, as Chapter 7 Trustee for the Debtors' estates, seeking approval of a settlement stipulation by and between the Trustee and appellee 23 Capital Limited (f/k/a XXIII Capital Limited) ("23 Capital," and, together with the Trustee, "Appellees"), pursuant to 11 U.S.C. § 105(a) and Rule 9019 of the Federal Rules of Bankruptcy Procedure; and (ii) the Order entered November 13, 2018 (A001) ("Retention Order") authorizing the Chapter 7 Trustee's retention and employment of Ashby & Geddes, P.A. and Troutman Sanders LLP as special litigation counsel to the Chapter 7 Trustee. The Settlement Order and the Retention Order were entered for the reasons stated at the November 5, 2018 hearing (A017-A056). For the reasons set forth herein, the Settlement Order and the Retention Order are affirmed.

## I.    BACKGROUND

### A.    Prepetition Facts and the Contract in Dispute

The Goodwins are leading sports agents who broker employment and endorsement contracts on behalf of their clients. (A245). In 1993, the Goodwins established Goodwin Sports Management, Inc. ("GSM") and Goodwin Associates Management Enterprises, Inc. ("GAME"; together with GSM, "the Goodwin Entities") to facilitate the Goodwins' management of their clients' endorsement contracts. (A243; A251).

---

[1]    The appendix (D.I. 8) filed in support of the Goodwins' opening brief (D.I. 7) is cited herein as "A__," and the appendix (D.I. 10) filed in support of the Trustee's answering brief (D.I. 9) is cited herein as "AA__."

On February 22, 2016, prior to the Petition Date, Debtors, certain of their subsidiaries and affiliates, and their former principals, Christopher Aden ("Aden") and Dorsey James ("James") entered into a Loan, Guaranty and Security Agreement dated as of February 22, 2016 ("the Loan Agreement") with 23 Capital. The Debtors' obligations to 23 Capital under the Loan Agreement, totaling more than $25.8 million, are asserted to be secured by liens on substantially all of their assets. (A074).

Subsequently, the Goodwins agreed to sell an interest in the Goodwin Entities to Christopher Aden and Dorsey James via their newly formed entity, Decade S.A.C. Contracts, LLC. (*See* A243-246). The Goodwins assert that prior to signing the agreement, Aden, James, and Decade replaced the negotiated terms of the parties' agreement with terms that were almost entirely unfavorable to the Goodwins and to which the Goodwins never would have agreed, including making 23 Capital a third-party beneficiary. (A249).

Goodwins assert that they have fulfilled their obligations under the agreement with Decade in accordance with the terms negotiated, and that Decade failed to make any of its required payments under the agreement, including a $3.5 million payment due to the Goodwins in early 2017. (A261). In 2017, the Goodwins provided notice that Decade had violated the terms of the parties' agreement and sought rescission of the agreement.

### B.     The SDNY Litigation

In September 2017, 23 Capital commenced litigation before Judge Gregory H. Woods, of the U.S. District Court for the Southern District of New York (Case No. 17-civ-06910-GHW), against the Debtors, Aden, James, and the Goodwins in connection with the agreement ("the SDNY Litigation"). (*See generally* A212-A284). 23 Capital asserted claims against the Debtors and the other defendants for breach of contract and various forms of equitable relief. In the SDNY

Litigation, Debtors and the Goodwins filed counterclaims against 23 Capital and cross-claims against each other. (A161-A211; A212-A268). The Goodwins maintain that the agreement was invalid and unenforceable. (A263, A265, A266, A268).

The parties conducted document discovery in the SDNY Litigation pursuant to a case management order entered on October 31, 2017. (A269). On May 1, 2018, the SDNY Court entered an order substituting Troutman Sanders as counsel of record for 23 Capital. (A276). Following the suggestion of bankruptcy filed by the Debtors, the SDNY Court ordered the case automatically stayed as to those entities. (A280). On the Trustee's request, the SDNY Court subsequently ordered the SDNY Litigation stayed until November 12, 2018 (since further extended) to determine the question of ownership of the Goodwin Entities. (A282, A284).

### C.    The Settlement Motion

On July 16, 2018 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. (A061). On July 17, 2018, the Trustee was appointed as chapter 7 trustee of the Debtors' estates pursuant to section 701(a) of the Bankruptcy Code. (*Id.*).

On October 15, 2018, the Trustee filed motions with the Bankruptcy Court seeking approval of his stipulation of settlement ("the Stipulation") with 23 Capital and the retention of Troutman Sanders (*i.e.*, 23 Capital's attorneys from the SDNY Litigation) and Ashby & Geddes (together, "Special Counsel") as special counsel to pursue certain claims ("the Claims") on behalf of the estates. (A059-137). The Trustee's general bankruptcy counsel is Archer & Greiner, P.C., and Special Counsel's role is limited to the matters identified in the Stipulation. (A075).

The Stipulation resolves 23 Capital's and the Debtors' claims against each other by granting 23 Capital an allowed, secured claim of $25 million in each of the Debtors' cases, and

releases all claims the Debtors had against 23 Capital, including those claims that had been asserted in the SDNY Litigation.  (A076-077).  23 Capital's allowed secured claim includes a lien on the Claims, and any recoveries on them, and represents a resolution of a dispute between the parties concerning whether 23 Capital's liens attached to commercial tort claims asserted by the Debtors, if any, or only to the recovery received by the Debtors on such claims.  (A076).  In exchange, 23 Capital agreed that it would fund the Trustee's investigation and prosecution of the Claims, would partially waive its lien on the Claims and their proceeds by sharing any recovery on the Claims with the Debtors' estates from the first dollar received, and would make a non-refundable advance payment to the estates of $75,000 on account of those recoveries.  (A077-078).  23 Capital also agreed that it would not pursue an unsecured deficiency claim against the estates to the extent the recoveries on the Claims are insufficient to satisfy its allowed, secured claim.  (A078).  The Stipulation further provides that the Trustee, not 23 Capital, is responsible for directing the litigation of the Claims.  (A075).  The Stipulation also provides that, absent consent of the Trustee in writing, Special Counsel may not represent 23 Capital in connection with any disputes with the Trustee.  (AA074).

The Goodwins objected to the proposed settlement and the proposed retention of 23 Capital's pre-petition counsel as a violation of the Bankruptcy Code's prohibition on the hiring of professional persons holding or representing interests adverse to the estate.  (A138).  The Goodwins assert that they are unsecured creditors by virtue of claims arising under the agreement, which agreement, the Goodwins have asserted in the SDNY Litigation, is invalid and void ab initio.  The United States Trustee did not object to Special Counsel's retention, nor did any creditor other than the Goodwins.

On November 5, 2018, the Bankruptcy Court held a hearing on the Goodwins' objections to the proposed settlement and retention. (*See* A017). By way of proffer, counsel to the Trustee reiterated the points made in the Settlement Motion, including the Trustee's investigation of 23 Capital, through independent counsel, his evaluation of assets and claims, and the Trustee's exercise of his business judgment in determining to release 23 Capital on the terms reflected in the proposed Stipulation in order to obtain the best possible recovery to the estate on the Claims. With respect to the Settlement Motion, there was no objection to the proffer nor any request for cross-examination of the Trustee. (A031-042; A046-A050). With respect to the retention of Special Counsel, the Goodwins argued that case law makes clear that "representing the secured creditor and then representing the debtor is an inherent conflict" and "an actual conflict." (A039). The Goodwins further argued that Trustee had failed to establish that no law firm other than Troutman Sanders might be willing to take on the representation of the estates in the SDNY Litigation. (A041-A042). The Trustee argued that he should not be deprived of his choice of counsel unless his retention of Troutman Sanders presented an actual conflict of interest, and, by virtue of the Settlement Order, upon which entry of the Retention Order was conditioned, there would be no actual conflict of interest. The Trustee argued that, by virtue of the proposed Settlement, if approved by the Bankruptcy Court, the interests of the Trustee and 23 Capital would be completely aligned for the limited purpose for which litigation counsel was being retained. (A029).

In its bench ruling, the Bankruptcy Court noted that the two proposed orders, governing the retention of 23 Capital's prepetition counsel and settlement of claims asserted against the estates by 23 Capital, "really have to be discussed together; they're, obviously, meshed." (A051). The Bankruptcy Court first assessed the proposed settlement with 23 Capital and found that "the settlement, itself, clearly meets being superior to the lowest range of reasonableness and will be

approved." (A052). The Bankruptcy Court further approved the proposed retention on the grounds that 23 Capital's lawyers "don't meet any of the criteria [outlined in 11 U.S.C. § 327(a)] except possibly do they represent an interest adverse to the estates." (A053). The Bankruptcy Court determined that 23 Capital's lawyers did not represent an interest adverse to the estates because their "retention is contingent on the settlement that releases claims of the estate to 23 Capital and, of course, preserves 23 Capital's rights as a secured creditor . . . . There is no actual conflict because there are no claims between the parties nor do I think there's an appearance of impropriety or anything along those lines." (*Id.*)

The Bankruptcy Court entered the Retention Order and Settlement Order on November 5, 2018, and November 13, 2018, respectively. This appeal followed and is now fully briefed. (D.I. 7, 9, 11). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II.  JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to hear an appeal from a final judgment of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). In conducting its review of the issues on appeal, this Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 80 (3d Cir. 1999). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992).

Bankruptcy courts have broad discretion to evaluate and approve, or not, proposed settlements and courts generally defer to a trustee's business judgment when there is a legitimate

business justification for the trustee's decision to settle. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393-95 (3d Cir. 1996). As a result, a bankruptcy court's decision to approve a settlement is reviewed under the abuse of discretion standard and should not be disturbed "unless there is a definite and firm conviction that the court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Will v. Nw. Univ.* (*In re Nutraquest, Inc.*), 434 F.3d 639, 645 (3d Cir. 2006) (quoting *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 320 (3d Cir. 2001)).

The Court also reviews a bankruptcy court's decision to approve an application for employment for abuse of discretion. *In re Pillowtex, Inc.*, 304 F.3d 246, 250 (3d Cir. 2002). "An abuse of discretion exists where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Marvel Ent'mt Group, Inc.*, 140 F.3d 463, 470 (3d Cir. 1998) (quoting *ACLU v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1476 (3d Cir. 1996)).

## III.  <u>ANALYSIS</u>

### A.  Settlement Order

Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). This Rule gives bankruptcy trustees broad authority to settle disputes so long as the settlement is fair, reasonable, and in the interest of the estate, *In re Martin*, 91 F.3d at 393, *In re Nutraquest,* 434 F.3d 639, 644 (3d Cir. 2006), and meets the lowest level of reasonableness. *In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993). The record reflects that, following an investigation of the Debtors' books and records, assets and liabilities and the claims that had been filed by and against them in the SDNY Litigation (A026-27; A063-064), as well as

the validity, nature, extent and priority of 23 Capital's claims, liens, and security interests under the loan agreement (A027; A063), the Trustee made a reasonable business decision to settle with the Debtors' senior secured lender. Among other things, the settlement avoided administrative insolvency for the estates by bringing in immediate cash and creating the potential for the estates to receive additional, unencumbered cash all without cost to the estates. Absent a settlement with 23 Capital, the Trustee would need to recover more than $25 million – without any practical ability to fund the necessary litigation – before other claimants would receive their first dollar.

The Goodwins contend that the Bankruptcy Court abused its discretion in entering the Settlement Order because that court did not apply the four-factor test established by the Third Circuit in *In re Martin* and approved the settlement even though it was not "fair and equitable." (*See* D.I. 7 at 18). The *Martin* factors require a court to consider the strengths and weaknesses of the claim being resolved, the cost and delay associated in pursuing the claim, and the general interest of creditors. *In re Martin*, 91 F.3d at 393. The record reflects that the *Martin* factors and related matters were discussed at length in the parties' submissions and at the Hearing. (A023-024, 027, 029-030, 051-052, 067). It is true that the Bankruptcy Court did not explicitly mention the *Martin* case in its analysis, but the record reflects that the Bankruptcy Court applied the relevant factors. Specifically, the Bankruptcy Court assessed and balanced the certain benefits afforded to the Debtors' estates by the entire settlement, with the possible, limited value of certain alleged claims held by the Debtors' estates against 23 Capital and compromised in the settlement, and the risks and complexities associated with litigating those claims. The Bankruptcy Court properly considered the benefits to the estates from the settlement, weighed them against the risk of not settling, and determined that the Trustee's business judgment in determining that the benefits outweighed the risks was sound.

The Goodwins further argue that the Bankruptcy Court abused its discretion in entering the Settlement Order because "it is impossible to evaluate what, if any, process in which the Trustee engaged in order to evaluate the bases and prospective value of the Estates' already-asserted claims against 23 Capital." (D.I. 7 at 18). The record, however, reflects that the Trustee detailed the factual and legal investigation he and his counsel undertook to evaluate the Debtors' claims against 23 Capital in the pleadings and proffer as well as his conclusion that "the merits of any potential claims against 23 Capital were speculative at best, would likely bring little value to the Debtors' Estates, and, at the same time, would be prohibitively expensive to prosecute, especially in light of the uncertainty of any results." (AA070). The Bankruptcy Court deferred to the Trustee's business judgment in settling those claims. (A051) ("I think that the business judgment of the trustee on those points really cannot be questioned . . ."); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991); *In re Martin*, 91 F.3d at 393-95 ("[c]ompromises are favored in bankruptcy" and courts generally defer to a trustee's business judgment when there is a legitimate business justification for the trustee's decision) (quoting 9 COLLIER ON BANKRUPTCY P 9019.03[1] (15th ed. 1993)); *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (in evaluating a settlement, the court "is permitted to rely upon 'opinions of the trustee, the parties and their attorneys'") (quoting *Int'l Distrib. Ctrs., Inc.*, 103 B.R. 420, 423 (S.D.N.Y. 1989)). Although the Bankruptcy Court's analysis was not detailed, the Court finds the standard met on this record, where the issues were clearly set forth in the pleadings and proffer and canvassed by the Bankruptcy Court. Under controlling law, the Bankruptcy Court was not required to undertake a detailed analysis of the factual and legal support for the Debtors' claims against 23 Capital that were settled and conduct a mini-trial of those claims to determine the reasonableness of the Trustee's decision to settle. *In re Neshaminy Office Bldg. Assoc.*, 62 B.R. 798, 803 (E.D. Pa. 1986)

("In determining whether to approve the trustee's application to settle a controversy, the Bankruptcy Court does not substitute its judgment for that of the trustee. 'Nor is the court to decide the numerous questions of law and fact raised by objections but rather to canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness.") (quoting *In re Carla Leather*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984)); *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010) (holding the bankruptcy court "need not conduct an independent investigation into the reasonableness of the settlement," nor is it necessary for the court to "conduct a 'mini-trial' of the facts or the merits underlying the dispute.") (citations omitted).

Finally, the Goodwins argue that the Bankruptcy Court erred in approving that portion of the Stipulation that grants 23 Capital a lien on the Debtors' commercial tort claims because those claims were not described with specificity as required by the Uniform Commercial Code. (D.I. 7 at 19). This argument is not persuasive. The UCC's rules about adequate descriptions of collateral in financing statements do not apply to settlements of disputed claims and resultant court orders approving those settlements. It is 23 Capital's position that even if its pre-petition lien did not cover commercial tort claims, it covered the proceeds of those claims such that any recovery on those claims would be for 23 Capital's benefit absent the Stipulation. (D.I. 9 at 12-13 (citing *City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.))*, 656 F.3d 82, 88-89 (1st Cir. 2011). Although the Goodwins may have meritorious arguments to the contrary, the Bankruptcy Court was not required to hold a mini-trial on each aspect of the parties' disputed claims against one another. The Trustee and 23 Capital resolved this dispute in the context of the global settlement, which was a reasonable exercise of the Trustee's business judgment and represented the only chance the Debtors had to try and realize any value flowing from the Debtors' commercial tort claims and was a good outcome in an uncertain litigation scenario, where it was

unlikely any other party would agree to fund the pursuit of those claims knowing the recovery was going to someone else.

Here, the Goodwins argue that the settlement is improper because 23 Capital will receive a lien on the Debtors' commercial tort claims which prevents the Goodwins, as purported unsecured creditors, from sharing in the recovery on those claims at a higher level. As the Bankruptcy Court correctly noted during the Hearing, it is an open question whether the Debtors' claims against the Goodwins are, in fact, commercial tort claims as opposed to contract claims, and, assuming some claims are tort claims, whether it would even be possible for a court to differentiate between recoveries on contract claims vs. tort claims. (A052) (". . . even if some of the claims being asserted, perhaps, aren't subject to the lien, most of the claims certainly are and we start to get into issues of whether a trial court is going to differentiate between which claim or which is subject to liability or not could be difficult. That could be litigated"). (A047). The Goodwins ignore this issue in the briefing. The Court agrees that the Trustee's decision to settle this disputed matter in the context of a global settlement with the Debtors' senior, secured lender is an appropriate exercise of his reasonable business judgment.

The Bankruptcy Court did not abuse its discretion in approving the settlement between 23 Capital and the estates, as the Bankruptcy Court canvassed the issues and the record supports the Bankruptcy Court's determination that the settlement satisfied the requirements of Bankruptcy Rule 9019 and was superior to the lowest range of reasonableness.

### B.     Retention Order

The Goodwins argue that the Bankruptcy Court erred as a matter of law in approving the Trustee's retention of Special Counsel, which according to the Goodwins, did not meet the requirements of § 327, as Special Counsel serves as counsel to a prepetition creditor, is not

"disinterested," and holds and represents interests adverse to the estates. (D.I. 7 at 10-19). The Goodwins also argue that the Bankruptcy Court erred because the "potential conflict" presented by Special Counsel's dual representation should have disqualified their retention. (D.I. 11 at 3-5). Because Special Counsel's retention was part of the Settlement, the Goodwins argue that both the Settlement Order and Retention Order must be vacated on this basis.

The Third Circuit has considered the statutory requirements for retention of counsel in several opinions. *See In re BH&P, Inc.*, 949 F.2d 1300 (3d Cir. 1991); *Marvel Ent'mt*, 140 F.3d 463; *Pillowtex*, 304 F.3d 246. In *Marvel Entertainment*, the Third Circuit "expressly reiterate[ed]" its earlier holding in *BH&P* that:

> (1) Section 327(a), as well as § 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an *actual conflict of interest*; (2) the district court *may within its discretion* – pursuant to § 327(a) and consistent with § 327(c) – disqualify an attorney who has a potential conflict of interest and (3) the district court may not disqualify an attorney on the *appearance of conflict* alone.

*Marvel Ent'mt*, 140 F.3d at 476 (emphasis added). Indeed, in *Marvel Entertainment*, the Third Circuit reversed the district court's disqualification of the trustee and the trustee's counsel because it was predicated on the appearance of a conflict. The Third Circuit held that, under section 327(a), the district court could disqualify counsel "only if it had an actual or potential conflict of interest." *Id*. at 477.

Under section 327(a) of the Bankruptcy Code, a trustee may employ one or more attorneys to represent him in carrying out his duties under the Bankruptcy Code, provided that such attorneys are "disinterested persons" and do not hold or represent an interest adverse to the estate. 11 U.S.C. § 327(a). The Third Circuit has explained that Section 327(a) sets forth two relevant standards for disqualification – one applicable to conflicts with the debtor's estate and one governing conflicts with other creditors. *Pillowtex*, 304 F.3d at 252 n.4. The first prohibits a professional from

"hold[ing] or represent[ing] an interest adverse to the estate." 11 U.S.C. § 327(a). The second, contained in the definition of "disinterested person," prohibits the retention of a creditor and further requires that a professional be free of "an interest materially adverse to the interest of . . . any class of creditors." 11 U.S.C. § 101(14). Thus, a professional may not have *any* conflict with the estate, but a conflict with creditors must be "material." *Id.*

The Goodwins argue that the Bankruptcy Court abused its discretion in approving Special Counsel's retention because Special Counsel is not disinterested and holds or represents interests adverse to the Estates. (D.I. 7 at 10-19).

### 1.     Special Counsel Does Not Hold an Interest Adverse to the Estates

The Goodwins claim that Special Counsel is not a "disinterested person" because a portion of the allowed secured claim granted to 23 Capital by the Stipulation includes legal fees owed to Troutman Sanders. (D.I. 7 at 15). In the SDNY Litigation, 23 Capital obtained summary judgment against Aden and James, the Debtors' former principals, in the amount of $25,813,306.85, reflecting their liability as of July 6, 2019 on their personal guaranties of the Loan. (AA 090). The record on that motion established that 23 Capital's claim included $1,409,679.05 for "fees and costs XXIII has incurred in enforcing its rights under the Loan Agreement." (AA090). The record, however, reflects that all of those fees and costs were incurred by 23 Capital's prior law firm, Loeb & Loeb, and not by Troutman Sanders. (AA093-097). The Trustee submitted the relevant evidence to the Bankruptcy Court, and addressed the matter at the Hearing. (A029) ("Putting aside the legal significance of that issue, factually that's irrelevant, Your Honor, because the prepetition legal fees that make up a portion of the secured claim do not relate to Troutman or Ashby & Geddes. They relate specifically to former counsel for [23 Capital], Loeb & Loeb"). Special Counsel is not disqualified from serving as special counsel based on fees owed to Loeb & Loeb.

## 2. Special Counsel Does Not Represent an Interest Adverse to the Estates

In addition to precluding estate professionals from themselves being creditors of a debtor's estate, section 327(a) of the Bankruptcy Code provides that such professionals may not "represent an interest adverse to the estate." The Goodwins argue that the dual representation of a secured creditor and the Debtor is an "inherent conflict." Appellees argue that 23 Capital is not adverse to the estates because those parties' claims against each other have been resolved, and the interests of 23 Capital and the estates are fully aligned in attempting to recover from the Goodwins and others to maximize the value of the estates.

Although 23 Capital is a creditor of the Debtors, its claim has been allowed as a result of the Settlement Order, and any claims the Debtors had against 23 Capital have been released for the same reason. As the Bankruptcy Court determined, the Stipulation creates a unity of interest between 23 Capital and the Debtors relating to the matters for which Special Counsel has been retained by the Trustee. (A053 ("They do not represent an interest adverse to the estates because [their] retention is contingent on the settlement that releases claims of the estate to 23 Capital . . . they're not adverse. They all pull in the same direction. There is no actual conflict because there are no claims between the parties nor do I think there's an appearance of impropriety or anything along those lines.")) There is no longer any dispute between 23 Capital and the Debtors because of the entry of the Settlement Order. As a result, Special Counsel's separate representation of 23 Capital does not constitute representation of an interest adverse to the Debtors.

Even absent such a settlement, courts in similar cases regularly permit a chapter 7 trustee to retain a creditor's attorney as his own to pursue claims designed to augment the debtor's estate. *See, e.g., Stoumbos v. Kilimnik*, 988 F.2d 949 (9th Cir. 1993) (rejecting appeal from bankruptcy court order approving retention of creditor's lawyer as special counsel to chapter 7 trustee because,

among other things, the interests of the creditor and the trustee are aligned in trying to increase the size of the debtor's estate); *Bank Brussels Lambert v. Coan (In re AroChem Corp.),* 176 F.3d 610 (2d Cir. 1999) (affirming order approving retention of creditor's lawyer as special counsel to chapter 7 trustee where counsel had previously represented creditor in action against other creditor because the clients' interests were fully aligned in pursuing recovery against the objecting creditor); *In re Midway Motor Sales, Inc.*, 355 B.R. 26 (Bankr. N.D. Ohio 2006) (granting chapter 7 trustee's motion to retain as special counsel law firm that represented an unsecured creditor and separate secured creditor where the interests of the creditors and the trustee were aligned in maximizing the value of the estate); *In re RPC Corp.*, 114 B.R. 116 (M.D.N.C. 1990) (approving retention as special counsel to chapter 7 trustee of law firm that was also representing one creditor in action against another, where the purpose of retention was to investigate and file claims against same creditor law firm was already pursuing for its other client).

> **3.      The Goodwins Failed to Identify An Actual Conflict of Interest or Potential Conflict of Interest Requiring Disqualification**

The Bankruptcy Code itself clarifies that a professional is not disqualified from employment solely because the professional represents the trustee and a creditor. *See* 11 U.S.C. 327(c). Instead, where, as here, there is an objection to counsel's retention, "the court shall disapprove such employment if there is an actual conflict of interest." 11 U.S.C. § 327(c). The Third Circuit has stated that "a conflict is actual, and hence per se disqualifying, if it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest. *Pillowtex*, 304 F.3d at 251 (citing *BH&P*, 949 F.2d at 1315). "The term 'actual conflict of interest' is not defined in the Code and has been given meaning largely through a case-by-case evaluation of particular situations arising in the bankruptcy context." *BH&P*, 949 F.2d at 1315. The alleged conflict must relate to the specific matter for which special counsel

is retained. *Stoumbos*, 988 F.2d at 964. In other words, Special Counsel is disqualified only if there is a conflict between the Debtors and 23 Capital relating to the pursuit of the Claims.

The Goodwins raise several arguments to assert that there is an actual conflict of interest between Special Counsel's representation of 23 Capital and its representation of the Trustee as Special Counsel. The Goodwins also assert that the Bankruptcy Code categorically forbids retentions that pose a potential conflict of interest. (D.I 11 at 3-5). As set forth above, it was within the Bankruptcy Court discretion, pursuant to § 327(a) and consistent with § 327(c) – to disqualify an attorney on the basis of a potential conflict of interest. *See Pillowtex*, 304 F.3d at 251. Having reviewed the issues raised below, the Court concludes that the Goodwins have failed to identify any actual conflict of interest, as the interests of the Debtors and 23 Capital in maximizing the value of the estates are fully aligned. The Court further finds no abuse of discretion in the Bankruptcy Court's decision not to disqualify Special Counsel on the basis of the potential conflicts of interest identified by the Goodwins on appeal.

First, the fact that 23 Capital has separate claims against the Goodwins does not create a conflict of interest with the Debtors' pursuit of their own claims against the Goodwins. *See, e.g., RPC Corp.*, 114 B.R. at 120 (holding that the interests of the estate and the law firm's creditor clients were aligned in maximizing the value of the estate by pursuing litigation against a bank where the law firm was involved in pending litigation against the same bank and the two proceedings "both involve the same basic issues and are essentially the same claim against the Bank.")

Second, the fact that the Trustee has decided to grant an allowed secured claim to 23 Capital does not create an actual conflict of interest. The Goodwins claim that an actual conflict of interest exists between the Debtors and 23 Capital because the Trustee purportedly "abandoned"

challenges to 23 Capital's liens by entering into the Stipulation. (D.I. 7 at 12-13). This argument ignores underlying facts. Here, the Trustee investigated the nature, extent and validity of 23 Capital's liens and found them to be valid and duly perfected. The parties disagreed on the issue of whether 23 Capital's liens extended to the Debtors' commercial tort claims (if any) but resolved this dispute in the context of a global resolution that provided clear value to the estates. This is not an abandonment of any duty, but rather, as the Bankruptcy Court recognized, an appropriate exercise of business judgment in an effort to maximize the value of the estates for all creditors.

Next, the Goodwins argue that an actual conflict of interest exists because 23 Capital and the Debtors each have claims against them, and "the Goodwins may have offset rights against the Estates and/or 23 Capital." (D.I. 7 at 13). The unidentified and unexplained offset rights, according to the Goodwins, will manifest themselves when 23 Capital and/or the Debtors consider a "prospective resolution or settlement of claims" against the Goodwins and "will undoubtedly warp the loyalty of the common counsel for 23 Capital and the Estates." *Id*. The Trustee argues that this is but a reformulated version of the Goodwins' main argument that a lawyer cannot represent two clients that have different claims against a common adversary. The Court agrees. The Goodwins cite no authority for their claimed offset related actual conflict. With respect to the Goodwins' claim that a potential conflict may arise, the Court finds no abuse of discretion in the Bankruptcy Court's failure to disqualify Special Counsel on the basis of hypothetical offset rights the Goodwins may have in the future against claims that have not yet even been brought against them, or the other contingencies identified in the Goodwin's reply brief. (D.I. 11 at 4).

Next, the Goodwins argue that an actual conflict exists between the Debtors and 23 Capital because one of the Goodwins may be successful in defeating the Debtors' claims against him while

the other is not. (D.I. 7 at 13-14). This would, apparently, create a conflict between the Debtors and 23 Capital because Special Counsel would be then representing the Trustee as fiduciary for the victorious Goodwin brother while at the same time representing 23 Capital in the SDNY Litigation pursuing claims against that same brother. The Trustee argues that the SDNY Litigation is stayed, so to the extent this claimed actual conflict depends on that case proceeding, the Goodwins' argument is belied by the facts. The Court disagrees. It is clear, however, that Special Counsel is being retained to investigate and prosecute claims on behalf of the Debtors and not as general bankruptcy counsel – Archer & Greiner has that role. Any alleged conflict must relate to the specific matter for which special counsel is retained. *Stoumbos*, 988 F.2d at 964. The Court finds that, in the Goodwin's hypothetical, there would be no conflict because Special Counsel would not be representing the Trustee as a fiduciary for the victorious Goodwin brother. The limited scope of Special Counsel's representation relates to the prosecution of the Claims and would not include the representation of the estates in such matters.

The Goodwins next argue that there is an actual conflict between the Debtors and 23 Capital concerning document production in the SDNY Litigation because the Debtors did not comply with their discovery obligations in that case. (D.I. 7 at 14). According to the Goodwins, Special Counsel will have to cure the Debtors' document production defects while at the same time "protecting and enhancing 23 Capital's litigation position" which, according to the Goodwins is "an untenable and inherent divergence of interests" that creates an actual conflict of interest between 23 Capital and the Debtors. *Id*. The Goodwins, however, do not explain how this conflict will manifest itself now, as the SDNY Litigation is stayed during the Debtors' bankruptcy. The Goodwins also argue that an actual conflict exists between the Debtors and 23 Capital concerning "disputes over disbursements of Estate proceeds" and "fundamental aspects of litigation strategy."

(D.I. 7 at 10). This argument, again, ignores the terms of the Stipulation and the limited role for which Special Counsel is retained. The Trustee and 23 Capital have already agreed on the disbursement of the proceeds of the Claims and that agreement has become an order of the Bankruptcy Court by the entry of the Settlement Order. The parties also agreed that the Trustee, not 23 Capital, controls the prosecution of the claims. (A075). To the extent there are disagreements between the parties, the parties' agreement is clear that Special Counsel may not be involved in those. (AA074).

The Goodwins' final claimed conflict between the Debtors and 23 Capital is based on the Debtors' scheduling the Goodwins as creditors of the Debtors. (D.I. 7 at 14). According to the Goodwins, this means that "it is impossible to expect" that the Trustee will fulfill his fiduciary duty to the Goodwins as creditors because the lawyers representing the Trustee in suing the Goodwins also represent another party that is also suing the Goodwins. *Id.* The Goodwins' argument, however, if taken to its logical conclusion, would mean that, contrary to 11 U.S.C. § 327(c), a law firm could never represent a creditor and a trustee "as bankruptcy cases not infrequently require a trustee to act against the interests of some creditors for the benefit of the estate as a whole." *In re Johnson*, 312 B.R. 810, 824 (E.D. Va. 2004). *See, also, RPC Corp.*, 114 B.R. at 120 (holding that the interests of the estate and the law firm's creditor clients were aligned in maximizing the value of the estate by pursuing litigation against a bank where the law firm was involved in pending litigation against the same bank and the two proceedings "both involve the same basic issues and are essentially the same claim against the Bank.")

The Bankruptcy Court did not abuse its discretion in approving the Trustee's retention of Special Counsel. Following the Bankruptcy Court's approval of the Settlement, any conflict between 23 Capital and the estates was resolved thus removing any impediment to Special Counsel

serving as estate professionals.  The Stipulation creates a unity of interest between the parties and makes the law firms 'disinterested' within the meaning of the relevant provisions of the Bankruptcy Code.  There is no actual conflict of interest between the Debtors and 23 Capital concerning their mutual claims against the Goodwins, and having considered the potential conflicts raised by the Goodwins, the Court finds no basis to conclude that Bankruptcy Court abuse its discretion in entering the Retention Order.

**IV.**    <u>**CONCLUSION**</u>

For the reasons set forth herein, the Settlement Order and Retention Order are affirmed.  A separate Order shall be entered.